UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GUANGDONG CELL BIOTECHNOLOGY LTD, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS CHRISTIAN SUDHOF, <br><br> Defendant. | Case No. 25-cv-08953-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE** <br><br> Re: Dkt. Nos. 5, 6 |

On September 9, 2025, plaintiff Guangdong Cell Biotechnology Ltd. ("Cell Biotech") filed this action against defendant Thomas Christian Sudhof in the Superior Court for the County of Santa Clara, asserting state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. No. 1, Ex. A. On October 17, 2025, Dr. Sudhof removed the action to federal court, invoking the Court's diversity jurisdiction, 28 U.S.C. § 1332. Dkt. No. 1 ¶ 3. Dr. Sudhof moves to dismiss all claims for lack of standing and failure to state a claim under Rule 12(b)(6) and to strike certain allegations and requests for relief in the complaint under Rule 12(f). Dkt. Nos. 5, 6. Cell Biotech opposes the motions. Dkt. Nos. 10, 12. The Court held a hearing on both motions on January 20, 2026. Dkt. No. 25.[1]

Upon consideration of the moving and responding papers and oral arguments presented, the Court grants in part and denies in part Dr. Sudhof's motion to dismiss, and denies Dr. Sudhof's motion to strike.

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 9.

United States District Court
Northern District of California

## I.    BACKGROUND

According to the complaint, Cell Biotech is a Chinese corporation "dedicated to the research, development, application, and promotion of stem cell technology and immune cell technology."  Dkt. No. 1, Ex. A ¶ 7.  Cell Biotech alleges that it was formerly known as Dongguan Cell Biotechnology Ltd.  *Id.* ¶ 5.  It changed its corporate name to its current name on July 31, 2020.  *Id.*  Cell Biotech alleges that Dr. Sudhof is a professor at Stanford University's School of Medicine.  *Id.* ¶ 6.

Cell Biotech alleges that on November 8, 2017, one of its representatives invited Dr. Sudhof to serve as a scientific advisor for Cell Biotech.  *Id.* ¶ 8.  According to Cell Biotech, on December 7, 2017, two representatives of Cell Biotech met with Dr. Sudhof at Stanford University.  *Id.* ¶ 9.  Cell Biotech alleges that it arranged for Dr. Sudhof to travel to China on March 9 and 10, 2018 to "meet with [p]laintiff's management team, discuss future cooperation plans, and execute a cooperation agreement."  *Id.* ¶ 10.

Cell Biotech alleges that on March 9, 2018, Cell Biotech and Dr. Sudhof executed a memorandum of understanding ("MOU") in China.  *Id.* ¶ 11.  According to the complaint, the MOU contains several provisions, including:

**Article 2**:  "Defendant agreed to serve as [p]laintiff's Chief Scientific Advisor and to provide advice to [p]laintiff and its scientific projects."  *Id.* ¶ 12.

**Article 5**:  "Plaintiff paid [d]efendant USD 50,000 in cash as the remuneration provided under the [MOU]."  *Id.* ¶ 17.

**Article 7**:  "If [d]efendant foresaw a potential conflict of interest, he was required to inform [p]laintiff."  *Id.* ¶ 13.

Cell Biotech alleges that on March 9, 2018, following execution of the MOU, Cell Biotech issued a letter of appointment to Dr. Sudhof which he "accepted on site."  *Id*. ¶ 14.  The complaint alleges that the letter of appointment states, "This letter is to confirm that [sic] Thomas C. Sudhof's appointment in Cell Biotechnology Inc. of Dongguan and Cells Group as Chief Scientific Advisor."  *Id.* ¶ 15.

According to the complaint, on March 10, 2018, Dr. Sudhof participated in events arranged

2

by Cell Biotech in China, including visiting a partner clinical cooperation hospital, attending a forum titled the "Medical Biotechnology Forum with Nobel Laureate Thomas C. Sudhof," and participating in scientific seminars. *Id.* ¶ 16. On March 10, 2018, Cell Biotech paid Dr. Sudhof $50,000 in cash, pursuant to Article 5 of the MOU. *Id.* ¶ 17. Cell Biotech alleges that on July 27, 2018, Dr. Sudhof attended the International Summit Forum on Biotechnology and Translational Medicine in his capacity as Cell Biotech's Chief Scientific Advisor. *Id.* ¶ 18. Cell Biotech paid Dr. Sudhof an additional $50,000 in cash, pursuant to Article 5 of the MOU. *Id.*

Cell Biotech alleges that, at some point,[2] it learned that during and around the same time of Dr. Sudhof's appointment as Cell Biotech's Chief Scientific Advisor, Dr. Sudhof had been engaging with competitors in violation of the MOU. *Id.* ¶ 19. Specifically, a report dated January 15, 2025 indicates that Dr. Sudhof serves as Chief Scientific Advisor to Cell Biotech's direct competitor Guangdong Wanhai Cell Biotechnology Co., Ltd. ("Wanhai"). *Id.* ¶ 20.

Cell Biotech claims that Dr. Sudhof never informed it of his engagement with Wanhai, and this failure constitutes a breach of the conflict-of-interest provision in Article 7 of the MOU. *Id.* ¶ 21. Cell Biotech alleges that Dr. Sudhof's conduct "has caused, and continues to cause, irreparable harm to [Cell Biotech's] business operations, competitive position, and goodwill." *Id.* ¶ 22.

In this action, Cell Biotech asserts claims for (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 7-26. Cell Biotech seeks specific performance, restitution, compensatory damages, punitive damages, and attorneys' fees and costs. *Id.* at 7.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish standing, a plaintiff must plausibly allege (1) an "injury in fact," (2) that

---

[2] The complaint does not clearly state when Cell Biotech learned of the alleged conflict of interest.

is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). To be particularized, an injury "must affect the plaintiff in a personal and individual way," and to be concrete, the injury must be real and not abstract. *Id.* at 339-40 (internal quotation marks omitted).

### B.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept

United States District Court
Northern District of California

4

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### C.   Rule 12(f)

Before responding to a pleading, a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). A matter is "impertinent" if it "do[es] not pertain, and [is] not necessary, to the issues in question." *Id.* (internal quotation marks omitted). "Scandalous" allegations include those that "cast a cruelly derogatory light on a party or other person." *Figy v. Lifeway Foods, Inc.*, No. 13-cv-04828-TEH, 2016 WL 4364225, at *3 (N.D. Cal. Aug. 16, 2016).

"[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011). When ruling on a motion to strike, the Court must accept the nonmoving party's allegations as true and liberally construe the attacked pleading in the light most favorable to the nonmoving party. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010).

## III.   MOTION TO DISMISS

Dr. Sudhof moves to dismiss all claims for lack of standing and for failure to state a claim for relief. Dkt. No. 5. Dr. Sudhof also requests judicial notice of two documents. Dkt. No. 5-1. The Court first addresses Dr. Sudhof's request for judicial notice before considering his arguments for dismissal of the complaint.

United States District Court
Northern District of California

5

**A.      Dr. Sudhof's Request for Judicial Notice**

In connection with his motion to dismiss, Dr. Sudhof asks the Court to take judicial notice of two documents:  (1) a civil complaint filed by Dr. Sudhof against Cell Biotech in China on or about November 5, 2024 ("China Proceeding Complaint"), and (2) an English translation of the China Proceeding Complaint.[3]  Dkt. No. 5-1.  Cell Biotech did not respond to Dr. Sudhof's request for judicial notice.

Federal Rule of Evidence 201 states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  These reliable sources include "matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (cleaned up). Accordingly, while a court may take judicial notice of matters of public record when deciding a motion to dismiss, it "cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999.

The request for judicial notice does not explain a basis for taking judicial notice of the China Proceeding Complaint, *see* Dkt. No. 5-1, but Dr. Sudhof states in the motion to dismiss that the Court "may consider the fact and timing of the Chinese filing for the limited purpose of understanding the improper motives underlying this action," Dkt. No. 5 at 1.  That is, Dr. Sudhof contends that Cell Biotech filed this action "to pressure him to abandon or compromise his claims in China." *Id.*

The Court finds it unnecessary and inappropriate to consider the China Proceeding Complaint and Cell Biotech's purported motive in resolving Dr. Sudhof's motion to dismiss.  Dr. Sudhof's request for judicial notice is denied.[4]

---

[3] The request for judicial notice describes the complaint filed in China as "Plaintiff Guangdong Cell Biotechnology Ltd.'s ('Plaintiff') Civil Complaint filed in the Country of China."  Dkt. No. 5-1 at 4.  However, the motion to dismiss and the English translation of the complaint indicate that the document is Dr. Sudhof's complaint.  Dkt. No. 5 at 1; Dkt. No. 5-1, Ex. B.

[4] Cell Biotech attaches three exhibits to its opposition brief without seeking judicial notice of

### B.    Rule 12(b)(1): Lack of Standing

Under Article III of the Constitution, Cell Biotech has standing to pursue a claim in federal court if it suffered an "injury in fact," there is a causal connection between the injury and the alleged misconduct, and the injury can be redressed by the court. *See Lujan*, 504 U.S. at 560-61. Dr. Sudhof contends that Cell Biotech lacks standing to pursue this action because Cell Biotech is not in privity of contract with Dr. Sudhof. Dkt. No. 5 at 4-6. "Privity of contract is a doctrine of contract law that states that only parties to a contract, hence those in privity to it, have rights or liabilities under the contract." *Fabrinet USA, Inc. v. Micatu, Inc.*, No. 20-cv-00382-VKD, 2020 WL 3414657, at *3 (N.D. Cal. June 22, 2020) (quoting *McCormick v. U.S. Bank, N.A.*, No. 12-cv-00433 AJB (WMC), 2012 WL 12869274, at *4 (S.D. Cal. Oct. 30, 2012)). "Absent exceptions to the general rule, privity of contract is a necessary element of a contract claim." *Id.* (citation omitted).

Dr. Sudhof argues that Cell Biotech is not in privity of contract because it was not a party to the MOU. Dkt. No. 5 at 4-6. The complaint alleges that Cell Biotech changed its name from "Dongguan Cell Biotechnology Ltd." to "Guangdong Cell Biotechnology Ltd." in 2020, and that it is the same entity that is a party to the MOU. *See* Dkt. No. 1, Ex. A ¶ 5. Dr. Sudhof contends that Cell Biotech must prove that it is not "a separate legal entity" from the entity named in the MOU, such as by alleging that the entities have the same registration number or that there was an assignment of contractual rights. Dkt. No. 5 at 5. Cell Biotech responds that it merely changed its name which did not affect its corporate identity or alter any of its contractual rights or obligations. Dkt. No. 10 at 4-6.

The Court agrees with Cell Biotech that a mere name change typically does not alter corporate identity. *See AmTrust Int'l Underwriters DAC v. 180 Life Scis. Corp.*, 670 F. Supp. 3d 930, 939-41 (N.D. Cal. 2023) (holding that entity was covered by insurance policies that it had executed under its previous name); *Abbott Bldg. Corp. v. United States*, 951 F.2d 191, 196 (9th Cir. 1991) ("[T]here is no support for the proposition that a change of name results in a change of

them. *See* Dkt. No. 10. The Court also does not consider these exhibits in deciding the motion.

7

entity."); *Carl Zeiss Vision GmbH v. Signet Armorlite, Inc.*, No. 09-cv-0657 DMS (POR), 2009 WL 10725774, at *2 (S.D. Cal. July 28, 2009) ("[T]he change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities.") (internal quotation marks and citation omitted); *U.S. for Integrated Energy, LLC v. Siemens Gov't Techs., Inc.*, No. 15-cv-01534-JVS-DFM, 2016 WL 11743177, at *3 (C.D. Cal. Mar. 22, 2016) ("Name changes do not affect a company's rights and abilities."). More importantly, Cell Biotech has adequately alleged that it is in privity of contract with Dr. Sudhof because it alleges it is the same as the entity that is a party to the contract. None of Dr. Sudhof's cited cases support the proposition that Cell Biotech must provide evidentiary support for these allegations at the pleading stage or that the complaint's allegations are insufficient as a matter of law to establish that Cell Biotech has standing to assert its breach of contract claim.

Accordingly, the Court denies Dr. Sudhof's motion to dismiss based on lack of standing.

### C.     Rule 12(b)(6): Failure to State a Claim

#### 1.     Claim 1: breach of contract

Cell Biotech asserts a claim for breach of contract. Dkt. No. 1, Ex. A ¶¶ 7-23. To state a claim for breach of contract, Cell Biotech must plausibly allege (1) the existence of a contract with Dr. Sudhof, (2) Cell Biotech's performance or excuse for nonperformance, (3) Dr. Sudhof's breach, and (4) resulting damages to Cell Biotech. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011).[5] Fairly read, the complaint alleges that the MOU is a contract between Cell Biotech and Dr. Sudhof; on two occasions, Cell Biotech paid $50,000 to Dr. Sudhof as remuneration pursuant to Article 5 of the MOU; Dr. Sudhof breached Article 7 of the MOU by failing to disclose a conflict of interest; and Dr. Sudhof's breach caused irreparable harm to Cell Biotech's business operations, competitive position, and goodwill. Dkt. No. 1, Ex. A ¶¶ 11, 13, 17-22.

---

[5] The Court assumes that Cell Biotech's claims are defined by California law because "a federal court exercising jurisdiction over non-federal claims must usually apply the substantive law of the state in which it sits." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 n.6 (9th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)). At the January 20, 2026 hearing, Cell Biotech confirmed that it pleads its claims under California common law.

United States District Court
Northern District of California

Dr. Sudhof moves to dismiss Cell Biotech's breach of contract claim on the following grounds:  (1) plaintiff fails to adequately plead the terms of the contract; (2) the contract terminated in 2018; (3) plaintiff fails to allege Dr. Sudhof's breach; and (4) the contract violates the statute of frauds.  *See* Dkt. No. 5 at 6-10.

### a.    Pleading contract terms; statute of frauds

First, citing *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252-53 (Cal. Ct. App. 1989), Dr. Sudhof argues that Cell Biotech fails to allege the terms of a contract because the complaint does not attach the MOU or quote the MOU's terms verbatim.  Dkt. No. 5 at 8-9.  The authority on which Dr. Sudhof relies is inapposite.  *Twaite* concerns pleading standards in California state court, "whereas in federal court, 'pleading is governed by Rule 8 of the Federal Rules of Civil Procedure, not by State procedural requirements.'"  *See Fabrinet USA, Inc.*, 2020 WL 3414657, at *4 (quoting *Salenfriend v. Green Tree Servicing, LLC*, No. 14-cv-03251 (EDL), 2014 WL 12647745, at *2 (N.D. Cal. Sept. 24, 2014)); *see also Berk v. Choy*, No. 24-440, 2026 WL 135974, at *3-4 (U.S. Jan. 20, 2026) (citation omitted) (reversing dismissal of case for failure to comply with Delaware's affidavit of merit requirement for medical malpractice complaints because Rule 8 establishes "implicitly, but with unmistakable clarity . . . that evidence of the claim is *not* required" and "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claim").  "Federal law does not require [a] [p]laintiff to recite the contract terms verbatim or to attach a copy of the contract to the complaint."  *Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, No. 05-cv-00917-CW, 2005 WL 1712008, at *2 (N.D. Cal. July 21, 2005).  Instead, a plaintiff may plead the legal effect of the contract.  *Id.*; *Salenfriend*, 2014 WL 12647745, at *2.  "Allegations that meet the notice-pleading standards of Rule 8 will suffice."  *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 6524396, at *3-4 (N.D. Cal. Nov. 3, 2016) (citation omitted) (holding plaintiff sufficiently pled a contract by its legal effect because it gave defendant "reasonable notice of the nature of the contract claims against him, the breach . . . , and the resulting damages").

Cell Biotech's pleading satisfies the requirements of Rule 8.  The complaint alleges that the parties executed the MOU in Dongguan City, China on March 9, 2018; Dr. Sudhof agreed to

serve as Cell Biotech's Chief Scientific Advisor and to provide advice to Cell Biotech and its scientific projects; Dr. Sudhof agreed to disclose any potential conflicts of interests; and Cell Biotech agreed to pay Dr. Sudhof remuneration in exchange.  Dkt. No. 1, Ex. A ¶¶ 11-13, 17; *see Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *13 (N.D. Cal. Oct. 12, 2016) (citation omitted) (while plaintiff "could have done more . . . to show how specific items in its complaint indeed suffice to establish the elements of its prima facie contract claim" and "specificity will at some point be necessary," plaintiff had "identified the 'substance of [the] relevant terms,' and the 'material obligation[s]' that it believes were breached" for purposes of Rules 8 and 12(b)(6)); *Salenfriend*, 2014 WL 12647745, at *2 (plaintiff adequately alleged "legal effect" by alleging defendant breached a forbearance agreement by refusing plaintiff's first two payments made pursuant to that agreement which resulted in plaintiff not receiving a loan modification and the creation of an arrearage).

Second, Dr. Sudhof contends that the alleged contract violates the statute of frauds because the complaint does not attach the written contract.  Dkt. No. 5 at 10.  "This argument conflates the statute of frauds with pleading standards."  *Salenfriend*, 2014 WL 12647745, at *2.  That Cell Biotech alleges the MOU was in writing is sufficient to satisfy the statute of frauds.  *Id.*

Accordingly, the Court concludes that the complaint adequately pleads the terms of the alleged contract.

#### b.    Termination of contract

Dr. Sudhof argues that the complaint's factual allegations "conclusively show" that the contract terminated in 2018.  Dkt. No. 5 at 9.  However, the complaint does not allege a definite duration for the contract.  *See generally* Dkt. No. 1, Ex. A.  Rather, the complaint alleges that the MOU states that Dr. Sudhof would serve as Cell Biotech's Chief Scientific Advisor and "provide advice to [p]laintiff and its scientific projects."  *Id.* ¶ 12.  Nothing in the complaint supports Dr. Sudhof's argument that his attendance of two events in 2018 and Cell Biotech's payments to him constitute "full performance" that terminated the MOU in 2018.  *See* Dkt. No. 5 at 9.

#### c.    Breach

Lastly, Dr. Sudhof contends that Cell Biotech fails to adequately allege his breach of the

contract. He argues that the complaint does not identify a specific contractual provision that he breached, and he argues that his identification as an advisor to Wanhai is insufficient to support a claim of breach. Dkt. No. 5 at 9-10. Cell Biotech responds that the complaint specifically alleges that Dr. Sudhof breached Article 7 of the MOU, which requires disclosure of conflicts of interest, and that by engaging with Wanhai during and around the same time that Cell Biotech appointed Dr. Sudhof as its Chief Scientific Advisor, Dr. Sudhof had a conflict of interest which he did not disclose to Cell Biotech. Dkt. No. 10 at 7; *see also* Dkt. No. 1, Ex. A ¶ 20 (alleging that Wanhai's website lists Dr. Sudhof as a Chief Scientific Advisor).

Taking the complaint's allegations as true and construing them in the light most favorable to Cell Biotech, the Court agrees with Cell Biotech that the complaint adequately alleges Dr. Sudhof's breach of Article 7 of the MOU. At the pleading stage, Cell Biotech is not required to "attach the webpage, a screenshot, a URL, the date of the alleged posting, who authored it, or any of the actual language purportedly used," as Dr. Sudhof contends. *See Berk*, 2026 WL 135974, at *5 (rejecting application of state law's heightened pleading standard in federal court because "the Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment.").

For purposes of the motion to dismiss, the Court concludes that Cell Biotech has pled sufficient facts establishing a plausible claim for breach of contract. Dr. Sudhof's motion to dismiss Cell Biotech's breach of contract claim is denied.

**2.      Claim 2: breach of the implied covenant of good faith and dealing**

Cell Biotech alleges that the MOU imposed on Dr. Sudhof an implied duty to act fairly and in good faith. Dkt. No. 1, Ex. A ¶ 25. Cell Biotech claims that Dr. Sudhof breached this implied duty through his undisclosed engagements with Wanhai which deprived Cell Biotech of the benefits under the MOU and caused irreparable harm to its business operations, competitive position, and goodwill. *Id.* Dr. Sudhof argues that Cell Biotech's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim. Dkt. No. 5 at 10-12.

"Every contract contains an implied-in-law covenant of good faith and fair

dealing." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 965 (N.D. Cal. 2015) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683-84 (Cal. 1988)). "Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (Cal. Ct. App. 1990) (citations and quotations omitted). "The precise nature and extent of the duty imposed . . . will depend on the contractual purposes." *Id.* (citation and quotations omitted). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

The Court agrees with Dr. Sudhof that, as currently pled, Cell Biotech's allegations of breach of the implied covenant for good faith and fair dealing are coextensive with its allegations for breach of contract. *Compare* Dkt. No. 1, Ex. A ¶¶ 21-22 ("Defendant never informed Plaintiff of his engagement with Wanhai, in violation of the conflict-of-interest provisions of the Agreement. Defendant's conduct constitutes a breach of contract under California law or, if applicable, under the laws of People's Republic of China. Defendant's malicious breach has caused, and continues to cause, irreparable harm to Plaintiffs' business operations, competitive position, and goodwill.") *with id.* ¶ 25 ("Defendant's actions, including his undisclosed engagements with Wanhai, deprived Plaintiff of the benefits under Agreement. Defendant's willful and malicious conduct has caused, and continues to cause, irreparable harm to Plaintiffs' business operations, competitive position, and goodwill, and thereby constituting a breach of implied covenant of good faith and fair dealing under California law or, if applicable, under the laws of People's Republic of China."). These allegations are virtually identical and the claims seek the same relief. *See id.* ¶¶ 23, 26.

At the January 20, 2026 hearing, Cell Biotech's counsel advised that Cell Biotech does not oppose dismissal of its claim for breach of the implied covenant of good faith and fair dealing.

United States District Court
Northern District of California

12

Accordingly, the Court grants the motion to dismiss claim 2 as unopposed.

## IV.    MOTION TO STRIKE

Dr. Sudhof asks the Court strike parts of paragraphs 2, 22, 23, 25, and 26 in the body of the complaint and paragraphs (i), (iii), and (iv) in the prayer for relief to the extent these paragraphs reference the "laws of the People's Republic of China" and to the extent they seek specific performance, punitive damages, and attorneys' fees. Dkt. No. 6. Cell Biotech opposes the motion on the grounds that Dr. Sudhof fails to identify any "redundant, immaterial, impertinent, or scandalous" material that warrants striking. Dkt. No. 12.

The Court agrees with Cell Biotech. Although the motion recites the Rule 12(f) legal standard, Dr. Sudhof does not argue that any of the identified paragraphs are "redundant, immaterial, impertinent, or scandalous." *See generally* Dkt. No. 6. Rather, the motion is premised on the arguments that (1) Cell Biotech improperly presumes the Court to "be acquainted with, or to have judicial knowledge" of Chinese laws and (2) Cell Biotech is not entitled to attorneys' fees, punitive damages, or specific performance and that the complaint. *Id.* at 3-6.

First, the complaint does not assume that the Court is "acquainted with" foreign laws; it merely pleads that foreign laws may be applicable. *See* Dkt. No. 1, Ex. A ¶ 2 ("This action arises under the contract laws of the state of California or, if applicable, under the People's Republic of China ('PRC').")"; Dkt. No. 12 at 2 ("Plaintiff submits that California law governs this dispute. In an abundance of caution to preserve all rights, Plaintiff alternatively pleads its claims under PRC law should the Court ultimately determine that PRC law applies."). The Court finds that this material is not "redundant, immaterial, impertinent, or scandalous" such that it must be stricken.

Second, the Court declines to strike the paragraphs of the complaint relating to Cell Biotech's prayers for relief as Rule 8 "expressly recognizes that a party's demand for relief 'may include relief in the alternative or different types of relief.'" *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-cv-01279-LHK, 2019 WL 3859035, at *3 (N.D. Cal. Aug. 16, 2019) (quoting Fed. R. Civ. P. 8(a)(3)) (denying motion to strike prayers for relief in breach of contract case); *see also Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 274-75 (N.D. Cal. 2015) (denying motion to strike brought on the basis that plaintiffs did not adequately plead the requirements for recovery of

United States District Court
Northern District of California

punitive damages against a corporation under Cal. Civ. Code § 3294(b)); *Platte Anchor*, 352 F. Supp. 2d at 1058 (denying motion to strike in part because movant "failed to show any possible prejudice that would result from allowing the prayer for attorney fees to remain").

Because it is not clear that the paragraphs at issue "have no possible bearing on the subject of the litigation," and because motions to strike are disfavored, the Court denies Dr. Sudhof's motion to strike. *See Platte Anchor*, 352 F. Supp. 2d at 1057; *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").

V.    **CONCLUSION**

For the reasons explained above, the Court grants in part and denies in part Dr. Sudhof's motion to dismiss, and denies Dr. Sudhof's motion to strike.  It is ordered that:

(1) Cell Biotech's breach of contract claim (claim 1) is not dismissed.

(2) Cell Biotech's breach of the implied covenant of good faith and fair dealing (claim 2) is dismissed.

**IT IS SO ORDERED.**

Dated: February 20, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California

14