United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GUANGDONG CELL BIOTECHNOLOGY LTD,

Plaintiff,

v.

THOMAS CHRISTIAN SUDHOF,

Defendant.

Case No. 25-cv-08953-VKD

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND DENYING PLAINTIFF'S MOTION TO STRIKE FIFTH COUNTERCLAIM AS MOOT**

Re: Dkt. Nos. 33, 34

Plaintiff Guangdong Cell Biotechnology Ltd. ("Cell Biotech") moves to dismiss defendant Thomas Christian Sudhof's counterclaims on *forum non conveniens*, international comity, statute of limitations, Rule 9(b), and Rule 12(b)(6) grounds. Dkt. No. 33. Cell Biotech also moves to strike the fifth counterclaim. Dkt. No. 34. Dr. Sudhof opposes the motions. Dkt. Nos. 37, 38. The Court held a hearing on both motions on May 12, 2026.[1] Dkt. No. 46.

Upon consideration of the moving and responding papers, and the oral arguments presented, the Court grants the motion to dismiss and denies the motion to strike as moot.

## I. BACKGROUND

Cell Biotech's operative complaint asserts one breach of contract claim. *See* Dkt. No. 1, Ex. A; Dkt. No. 28. On March 6, 2026, Dr. Sudhof filed an answer to the complaint and asserted five counterclaims against Cell Biotech. Dkt. No. 31. In support of his counterclaims, Dr. Sudhof alleges that in February 2018, he communicated with three representatives of Cell Biotech to

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 9.

negotiate a memorandum of understanding ("MOU"). *Id.* at 12-13. Dr. Sudhof alleges that he informed Cell Biotech's representatives that due to his "position as an employee of the HHMI and of Stanford University and as a member of the board of directors of Sanofi Pharmaceuticals," he could not: (i) enter into an agreement with a for-profit company, (ii) serve as a scientist or serve in any managerial or executive role, or (iii) affiliate himself with a laboratory. *Id.* at 13. Dr. Sudhof claims Cell Biotech's representative responded that Cell Biotech "underst[ood] and respect[ed]" his legal constraints. *Id.* Dr. Sudhof alleges he entered the MOU with Cell Biotech, relying on Cell Biotech's representation that his legal constraints would be respected, including Cell Biotech's representation that it would establish a "Cell Engineering Laboratory" as an academic non-profit laboratory. *Id.*

According to Dr. Sudhof, in 2019, he formally terminated his relationship with Cell Biotech. *Id.* at 10-11. Dr. Sudhof alleges that in July 2024, he discovered that statements made by Cell Biotech's representatives during the February 2018 negotiations were false. *Id.* at 13-14. Specifically, he contends that the statements were false because Cell Biotech is a for-profit entity and Cell Biotech never established an academic non-profit laboratory. *Id.* at 13. Dr. Sudhof claims Cell Biotech and its representatives "had no intention of establishing the promised academic non-profit laboratory" and "knew their representations were false." *Id.* at 14.

Dr. Sudhof also alleges that in July 2024, he discovered that Cell Biotech's website claimed that Dr. Sudhof was Cell Biotech's Chief Scientific Officer and "Expert Advisor." *Id.* at 10. He further claims that other parts of Cell Biotech's website, including the "Group Introduction," "Development History," and "News Center" sections, repeatedly claimed to have hired Dr. Sudhof as Cell Biotech's Chief Scientific Officer or Chief Scientist. *Id.* Dr. Sudhof also alleges that he discovered that Cell Biotech used his name and image for promotion on its official WeChat account.[2] *Id.* Dr. Sudhof claims Cell Biotech used his name and likeness in other materials including Cell Biotech's "communications, introductions, reports, and promotional materials." *Id.* According to Dr. Sudhof, he did not and could not have discovered Cell Biotech's

[2] WeChat is a Chinese messaging, social media, and mobile payment app. *See U.S. WeChat Users All. v. Trump*, 488 F. Supp. 3d 912, 916 (N.D. Cal. 2020).

use of his name and likeness before July 2024 because Cell Biotech used the Chinese translation of his name. *Id.* at 14.

Dr. Sudhof alleges that as a professor at Stanford University and a Nobel Laureate, he benefits from maintaining his reputation and ensuring that his professional affiliations are depicted to the public accurately. *Id.* at 11. He alleges that Cell Biotech deceived the public into believing that Dr. Sudhof is affiliated with Cell Biotech and harmed his ability to enter into certain business relationships and prospective economic engagements. *Id.*

Dr. Sudhof asserts five counterclaims against Cell Biotech: (1) misappropriation of name or likeness in violation of California common law and Cal. Civ. Code § 3344; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (5) declaratory relief that Dr. Sudhof "has no contractual obligations to [Cell Biotech] under the alleged MOU and that [Cell Biotech] is not a party entitled to enforce it." *Id.* at 9-17. On his own counterclaims, Dr. Sudhof seeks damages, injunctive relief, attorneys' fees and costs, and pre-judgment and post-judgment interest. *Id.* at 17-18.

## II. LEGAL STANDARD

Counterclaims are governed by the same pleading standards that apply to complaints, and likewise, a motion to dismiss a counterclaim is judged according to the standards that apply to a motion to dismiss a claim in a complaint. *Strojnik v. Ensemble Hotel Partners, LLC*, No. 19-cv-01844-VKD, 2019 WL 5595169, at *2 (N.D. Cal. Oct. 30, 2019).

### A. Deference to Foreign Forum

#### 1. *Forum non conveniens*

*Forum non conveniens* is "an exceptional tool to be employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). Courts considering a motion for dismissal on the ground of *forum non conveniens* must decide "whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's inconvenience . . . ." *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir.

United States District Court
Northern District of California

2002)). Defendants face a "heavy burden of proof" in showing that an adequate alternative forum exists where the plaintiff is a United States citizen. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). "Unlike a § 1404(a) motion, a successful motion under forum non conveniens requires dismissal of the case. That inconveniences plaintiffs in several respects and even 'makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 n.8 (2013) (citations omitted); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) ("The doctrine of forum non conveniens is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case.").

When ruling on a motion to dismiss for *forum non conveniens*, courts must consider (1) the availability of an adequate alternative forum and (2) whether the balance of private and public interest factors favors dismissal. *Lueck*, 236 F.3d at 1142 (citing *Piper Aircraft*, 454 U.S. at 254 n.22).

**2. International abstention**

The doctrine of abstention permits a district court to decline jurisdiction in deference to a parallel proceeding. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule" and applies only in "exceptional circumstances." *Id.* The district court should weigh several factors in the international context. These factors include avoidance of piecemeal litigation, the order in which the forums obtained jurisdiction (i.e., the "first-to-file" rule), the rule of decision, parallelism of the suits, avoidance of forum shopping, and appropriate use of judicial resources. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841-47 (9th Cir. 2017). These factors are not a checklist; they must instead be considered "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 842 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). "Though 'exact parallelism . . . is not required,' substantial similarity of claims is necessary before abstention is available." *Id.* at 845 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Still, "conflicting results, piecemeal litigation,

and some duplication of judicial effort is the unavoidable price of preserving access to . . . federal relief." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1979). The Ninth Circuit "reject[s] the notion that a federal court owes greater deference to foreign courts than to our own state courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991).

**3. International comity**

"International comity is a doctrine of prudential abstention, one that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (quotation marks and citation omitted). The aspect of the doctrine referred to as "comity among courts" or "adjudicatory comity," is "viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Id.* at 599 (quotation marks and citation omitted). "[C]ourts have struggled to apply a consistent set of factors in their comity analyses." *Id.* at 603.

The Ninth Circuit has found the following factors to be a useful starting point: (1) "the strength of the United States' interest in using a foreign forum"; (2) "the strength of the foreign governments' interests"; and (3) "the adequacy of the alternative forum." *Id.* (quotation marks and citation omitted). With respect to the first factor, U.S. interests, the Ninth Circuit has articulated a non-exclusive list of considerations, including: "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests." *Id.* at 604. With respect to the second factor, foreign interests, the Ninth Circuit has held that "[t]he proper analysis of foreign interests essentially mirrors the consideration of U.S. interests." *Id.* at 607. Finally, with respect to the third factor, adequacy of the alternative forum, the Court considers whether the plaintiff has shown that the alternative forum is "clearly unsatisfactory" or would result in "manifest injustice." *Id.* at 614.

**B. Rule 9(b)**

Allegations sounding in fraud, including allegations of false advertising, are subject to the heightened pleading standard under Rule 9(b). *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F.

Supp. 3d 623, 634 (N.D. Cal. 2019) (stating that UCL claims sounding in fraud are subject to the Rule 9(b) standard). Under Rule 9(b), allegations of fraud must be pled "with particularity." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (citations and quotations omitted). This includes pleading "the who, what, when, where, and how of the misconduct charged." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (citation and quotations omitted).

**C. Rule 12(b)(6)**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). On such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

A complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

**D. Rule 12(f)**

Before responding to a pleading, a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). A matter is "impertinent" if it "do[es] not pertain, and [is] not necessary, to the issues in question." *Id.* (internal quotation marks omitted). "Scandalous" allegations include those that "cast a cruelly derogatory light on a party or other person." *Figy v. Lifeway Foods, Inc.*, No. 13-cv-04828-TEH, 2016 WL 4364225, at *3 (N.D. Cal. Aug. 16, 2016).

"[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011). When ruling on a motion to strike, the Court must accept the nonmoving party's allegations as true and liberally construe the attacked pleading in the light most favorable to the nonmoving party. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010).

## III. MOTION TO DISMISS

Cell Biotech moves to dismiss all counterclaims on *forum non conveniens*, international abstention, and international comity grounds. Dkt. No. 33 at 16-24. Cell Biotech also moves to dismiss the first counterclaim on statute of limitations grounds and the second, third, fourth, and fifth counterclaims for failure to state a claim for relief. *Id.* at 4-16. Cell Biotech also requests judicial notice of five documents. Dkt. No. 33-2. The Court first addresses Cell Biotech's request

for judicial notice. Then, the Court addresses Cell Biotech's *forum non conveniens* argument before addressing its other arguments for dismissal. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection.").

**A. Cell Biotech's Request for Judicial Notice**

In connection with its motion to dismiss, Cell Biotech asks the Court to take judicial notice of five documents from another judicial proceeding between the same parties in China ("China Proceeding"): (1) the parties' MOU, dated March 9, 2018; (2) Dr. Sudhof's civil complaint filed in the China Proceeding; (3) an English translation of Dr. Sudhof's complaint in the China Proceeding; (4) excerpts from the evidentiary materials submitted by Dr. Sudhof in the China Proceeding; and (5) an English translation of the excerpts from the evidentiary materials submitted by Dr. Sudhof in the China Proceeding. Dkt. No. 33-2 at 2-3, Exs. A-E. Dr. Sudhof opposes Cell Biotech's request for judicial notice on the grounds that the accuracy of the documents is questionable; the English translations cannot readily be verified; and the Chinese court documents are not materials "within the trial court's territorial jurisdiction." Dkt. No. 37 at 8-9.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). These reliable sources include "matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (cleaned up). Accordingly, while a court may take judicial notice of matters of public record when deciding a motion to dismiss, it "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999.

"In a motion to dismiss for forum non conveniens, the allegations in the complaint need not be accepted as true, and the court may consider evidence outside the pleadings." *Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1019 (N.D. Cal. 2023) (quoting *Farhang v. Indian*

United States District Court
Northern District of California

*Inst. of Tech.*, No. 08-cv-02658-RMW, 2012 WL 113739, at *8 (N.D. Cal. Jan. 12, 2012)).

Dr. Sudhof admits that he initiated the China Proceeding on November 5, 2024 and that the parties recently completed a trial in the China Proceeding. Dkt. No. 37 at 6-7. Dr. Sudhof himself previously filed a copy of his complaint from the China Proceeding and an English translation of that complaint in the instant case in connection with his motion to dismiss Cell Biotech's complaint. Dkt. No. 5-1 ¶¶ 2-3, Exs. A-B. Dr. Sudhof's and Cell Biotech's English translations of the complaint filed in the China Proceeding are not identical, but the crux of that complaint is that Cell Biotech allegedly infringed Dr. Sudhof's "portrait and name rights via the internet." *Compare* Dkt. No. 5-1 ¶ 3, Ex. B *with* Dkt. No. 33-2 at 2, Ex. C.

The Court takes judicial notice of the complaint filed in the China Proceeding and the English translation of that complaint filed by Dr. Sudhof at Dkt. No. 5-1 ¶¶ 2-3, Exs. A-B. The Court takes judicial notice of these documents solely for the purpose of noticing the existence of the China Proceeding and the nature of Dr. Sudhof's claims in the China Proceeding, so that the Court may properly evaluate Cell Biotech's *forum non conveniens* arguments. *See Aldini AG v. Silvaco, Inc.*, No. 21-cv-06423-JST, 2022 WL 20016826, at *10 (N.D. Cal. Aug. 3, 2022) (taking judicial notice of the existence of court decisions and other court filings in French lawsuits brought by the plaintiff without taking judicial notice "of the truth of the facts contained in those decisions" for motion to dismiss for *forum non conveniens*, among other bases (internal quotations omitted)), *aff'd*, No. 23-15630, 2024 WL 5165600 (9th Cir. Dec. 19, 2024).

The Court declines to take judicial notice of Cell Biotech's exhibits, including uncertified English translations of documents. Dr. Sudhof challenges the accuracy of Cell Biotech's translations and the Court cannot evaluate the Chinese exhibits without translations.

**B. Deference to Foreign Litigation**

Cell Biotech argues that the Court should defer to the China Proceeding and dismiss Dr. Sudhof's counterclaims under the doctrines of *forum non conveniens*, international abstention, and international comity. Dkt. No. 33 at 16-24. Dr. Sudhof contends that the doctrines "are inapplicable and do not bar" his counterclaims. Dkt. No. 37 at 16-18.

**1. *Forum non conveniens***

Cell Biotech moves to dismiss all counterclaims for *forum non conveniens* on the following grounds: (1) China provides an adequate alternative forum; (2) the private interest factors favor dismissal; and (3) the public interest factors favor dismissal. Dkt. No. 33 at 20-24. Dr. Sudhof responds that the doctrine of *forum non conveniens* is "inapplicable" because Cell Biotech "availed itself of the Courts in the state of California" by initiating this action as the plaintiff; Cell Biotech has not made "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience"; and Cell Biotech has not established that this action and the China Proceeding are "truly the same, similar, overlapping, or even parallel." Dkt. No. 37 at 16-18. Dr. Sudhof does not address the adequacy of China as an alternative forum or the private and public interest factors. *See id.*

Before turning to Cell Biotech's arguments regarding the adequacy of an alternative forum and the private and public interest factors, the Court rejects Dr. Sudhof's threshold argument that *forum non conveniens* is "inapplicable" because Cell Biotech initiated this action in this District. *See* Dkt. No. 37 at 16-18. "Several district courts have dismissed counterclaims based on *forum non conveniens* without dismissing the underlying claims." *See, e.g.*, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 04-cv-2000-CW, 2006 WL 2846436, at *2 (N.D. Cal. Oct. 3, 2006) (rejecting counterclaimant's argument "that the doctrine of *forum non conveniens* is inapplicable here because [counterclaim defendant] seeks to force [counterclaimant] to litigate its claims against [counterclaim defendant] in Taiwan, while [counterclaim defendant] pursues its own claims against [counterclaimant] in this Court"); *see also Israel Disc. Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007) (dismissing counterclaim for *forum non conveniens* and observing that "[c]ourts have consistently held that dismissal of a counterclaim upon forum non conveniens grounds is proper"), *aff'd sub nom. Israel Disc. Bank, Ltd. v. Schnapp*, 321 F. App'x 700 (9th Cir. 2009).

**a. Adequate alternative forum**

"The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff." *Lueck*, 236 F.3d at 1143. "An alternative forum is deemed

adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225; *see also Lueck*, 236 F.3d at 1143. "[T]he requirement that the alternative forum provide some remedy for plaintiff's complained of wrong is easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Carijano*, 643 F.3d at 1225-26 (internal quotations omitted; citation omitted). Conversely, an alternative forum would be inadequate if, for example, it "does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 254 n.22.

With respect to the first prong of the adequacy analysis, Cell Biotech argues that Dr. Sudhof is amenable to service of process in China. Dkt. No. 33 at 20. But this is irrelevant. The question that must be addressed is whether the *counterclaim defendant*, i.e., Cell Biotech, is amenable to service in the alternative forum. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 839 (9th Cir. 2010) ("It is well established that a counterclaim results in shifting the parties so that the party counterclaiming becomes the plaintiff on the counterclaim and the original plaintiff becomes the defendant."). The record reflects that Cell Biotech is amenable to service in China. It is a Chinese company and is actively engaged in litigation with Dr. Sudhof in China.

Regarding the second prong of the adequacy analysis, Cell Biotech argues that Chinese law affords Dr. Sudhof adequate remedies for his counterclaims. Dkt. No. 33 at 20-21. Cell Biotech claims that "Article 995 of the Civil Code of the People's Republic of China provides that when a personality right is infringed, the injured party may seek civil liability from the infringing party under the Civil Code and other applicable laws." *Id.* In addition, Cell Biotech contends that Dr. Sudhof's choice to pursue his claims first in China "demonstrates his confidence in the adequacy of those remedies." *Id.* at 21. Dr. Sudhof does not argue otherwise.

Cell Biotech has carried its burden to establish that Chinese law offers Dr. Sudhof adequate remedies for his first counterclaim for misappropriation of name and likeness. *See Satisfied Brake Prods. Inc. v. Savage*, No. 10-cv-929-JST-SHx, 2010 WL 11595845, at *3-4 (C.D. Cal. Dec. 2, 2010) (holding that China was adequate alternative forum for commercial dispute because "there are a number of recent cases in which the courts have determined that [China]

provides an adequate forum for business and commercial actions" and plaintiff "fail[ed] to contest the issue" (citing *Sinochem*, 549 U.S. 422)); *see also Great Bowery Inc. v. Valnet, Inc.*, 812 F. Supp. 3d 338, 356 (S.D.N.Y. 2025) ("Plaintiff's choice to pursue its claims first in Canada undermines Plaintiff's argument that the Federal Court of Canada is not capable of adjudicating its infringement claims or providing appropriate remedies." (collecting cases)).

Cell Biotech does not address whether Chinese law offers Dr. Sudhof adequate remedies for his intentional misrepresentation, negligent misrepresentation, UCL, and declaratory relief counterclaims. Indeed, the entirety of Cell Biotech's *forum non conveniens* analysis only discusses the first counterclaim for misappropriation of name and likeness. *See* Dkt. No. 33 at 19-24. Cell Biotech's motion suggests that partial dismissal of the counterclaims for *forum non conveniens* may be appropriate. *Id.* at 3 ("Dismissal is also appropriate if the Court determines that the action, *or particular claims*, should not proceed in the chosen forum." (emphasis added)). At the hearing, Cell Biotech stated that the Court may treat the first counterclaim differently from the other counterclaims for purposes of the *forum non conveniens* analysis. Dkt. No. 46. As Cell Biotech has not addressed whether any of Dr. Sudhof's other counterclaims should be dismissed for *forum non conveniens,* the Court will limit its analysis accordingly.

On the record presented, the Court finds that China is an adequate alternative forum for Dr. Sudhof's misappropriation of name or likeness counterclaim.

**b. Balance of private interests**

The material private interest factors relevant to a *forum non conveniens* analysis are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Lueck*, 236 F.3d at 1145 (citation omitted).

With respect to the first factor, the residence of the parties and witnesses, Cell Biotech is a Chinese corporation with no physical presence or employees in California whereas Dr. Sudhof resides in Santa Clara County, California within this District, and does not reside in China. Dkt.

United States District Court
Northern District of California

No. 31 at 9; Dkt. No. 33 at 22. Cell Biotech argues that the "vast majority of witnesses" are located in China. Dkt. No. 33 at 22. As noted above, Dr. Sudhof provides no information or argument on this point. It appears from the record presented that the witnesses with information material to the first counterclaim are Dr. Sudhof himself and the Cell Biotech personnel responsible for using Dr. Sudhof's name and likeness in marketing and promotional materials, allegedly without his permission. *See* Dkt. No. 31 at 9-12. As it is not entirely clear where the Cell Biotech personnel responsible for using Dr. Sudhof's name and likeness in marketing and promotional materials reside, or how many such personnel may be witnesses for this counterclaim, the Court treats this factor as neutral.

Turning to the second factor, the forum's convenience to the litigants, Cell Biotech contends that Dr. Sudhof's decision to initiate the China Proceeding demonstrates that he can litigate in China without difficulty. Dkt. No. 33 at 22. Dr. Sudhof does not contest this argument. The Court agrees that the fact that Dr. Sudhof initiated the China Proceeding undermines any argument that it is inconvenient for him to litigate in China. The second factor weighs in favor of dismissal.

As for the third factor, access to physical evidence and other sources of proof, Cell Biotech notes that "this dispute is centered on acts of a Chinese corporation that occurred in China." Dkt. No. 33 at 22. Indeed, Dr. Sudhof alleges that Cell Biotech misappropriated his name and likeness on Cell Biotech's website, WeChat account, and other Cell Biotech "communications, introductions, reports, and promotional materials." Dkt. No. 31 at 10. He further alleges that Cell Biotech used the Chinese translation of Dr. Sudhof's name. *Id.* at 14. While this evidence is likely accessible through electronic discovery, the Court finds that this factor weighs in favor of dismissal as it appears that much of the evidence will need to be translated from Chinese to English. *See Tongfang Glob. Ltd. v. Element Television Co., LLC*, No. 20-cv-876-JFW(AFMX), 2020 WL 4354173, at *5 (C.D. Cal. June 22, 2020) (finding access to physical evidence factor weighed in favor of dismissal where "the physical evidence upon which the parties will rely consists of documents and communications written in Chinese and located in China").

As to the fourth and fifth factors, the need to compel unwilling witnesses to testify and the

cost of bringing witnesses to trial, the Ninth Circuit has advised that courts considering these factors "should evaluate the materiality and importance of the anticipated . . . witnesses' testimony and then determine their accessibility and convenience to the forum," rather than simply "the number of witnesses . . . in each locale." *Boston Telecomms. Grp.*, 588 F.3d at 1209 (quoting *Lueck*, 236 F.3d at 1146). The parties have not presented information on this point. Cell Biotech simply contends that the "vast majority of witnesses" are in China and that "[r]equiring participation in this litigation in the United States would impose substantial travel costs on the parties and witnesses." Dkt. No. 33 at 22. Dr. Sudhof's opposition is silent on this point. The Court finds that the fourth and fifth factors are neutral. *See Carijano*, 643 F.3d at 1231 ("[T]he initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify.").

With respect to the sixth factor, Cell Biotech contends that a judgment of this Court would not be enforceable in China. Dkt. No. 33 at 23. While Cell Biotech is correct that the United States is not a party to any treaty expressly providing for the recognition or enforcement of U.S. judgments in foreign countries, *see* Dennis Hranitzky, 2 International Execution Against Judgment Debtors § 79:3 (July 2026 Update), Cell Biotech's argument relies on a single source cited in a footnote as support, which it purports is in Chinese, *see* Dkt. No. 33 at 23 n.1. Cell Biotech does not provide an English translation of the cited source nor any expert testimony in support of its argument. The Court finds this factor to be neutral. *See Kleiner v. Spinal Kinetics, Inc.*, No. 15-cv-02179-EJD, 2016 WL 1565544, at *5 (N.D. Cal. Apr. 19, 2016) (finding factor neutral where "[n]either party present[ed] any persuasive evidence or compelling arguments regarding the enforceability of the judgment factor").

The final consideration is a catchall factor: "all other practical problems that make trial of a case easy, expeditious, and inexpensive." This case is still in the early stages whereas the China Proceeding held a trial on December 24, 2025. *See* Dkt. No. 33 at 1. In the China Proceeding, Dr. Sudhof alleged that Cell Biotech "repeatedly used the Plaintiff's name and image for commercial promotion on its WeChat official account, 'Cell Bio-Cell Bank,' and on its official website, without the Plaintiff's consent, falsely claiming to have hired the Plaintiff as the company's Chief

United States District Court
Northern District of California

Scientist." Dkt. No. 5-1 ¶ 3, Ex. B at ECF 16. Dr. Sudhof further alleged that Cell Biotech's "official website also directly used the Plaintiff's name or image in the 'Expert Advisors,' 'Group Introduction,' 'Development History,' and 'News Center' sections, similarly falsely claiming to have hired the Plaintiff as the company's Chief Scientist . . . ." *Id.* Dr. Sudhof's allegations in the China Proceeding are identical to those alleged in support of his first counterclaim in this action. *See* Dkt. No. 31 at 10 ("[Cell Biotech's] website falsely claimed that Dr. Sudhof was part of [Cell Biotech's] 'Expert Advisors,' and included his name and likeness in numerous other sections of its website, including under 'Group Introduction,' 'Development History,' and 'News Center' sections, repeatedly falsely claiming to have hired Dr. Sudhof as [Cell Biotech's] Chief Scientific Officer or Chief Scientist. . . . [Cell Biotech] depicted Dr. Sudhof's name and image for commercial promotion on its WeChat official account, named 'Cell Bio-Cell Bank,' without Dr. Sudhof's authorization.").

The Court finds that the China Proceeding involves litigation of the same claim regarding Cell Biotech's alleged misappropriation of Dr. Sudhof's name and likeness. Moreover, there is a risk of inconsistent rulings with the pending judgment from the China Proceeding. Thus, the seventh private interest factor weighs heavily in favor of dismissal. *See, e.g.*, *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (affirming dismissal on *forum non conveniens* ground where district court weighed "all other factors that render trial of the case expeditious and inexpensive" in favor of dismissal because the parallel foreign action "was further advanced than the United States action").

The private interest factors either weigh in favor of dismissal or are neutral; none weigh against dismissal. On balance, given the existence and progress of the China Proceeding, the Court finds that the private interest factors weigh in favor of dismissal. *See Lueck*, 236 F.3d at 1147 ("Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal.").

**c. Balance of public interests**

The relevant public interest factors include: (1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court;

and (5) the costs of resolving a dispute unrelated to the forum. *Lueck*, 236 F.3d at 1147 (citations omitted).

As to the first factor, the Court asks "only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Boston Telecomms. Grp.*, 588 F.3d at 1212. "Jurisdictions generally have an interest in providing a forum for their citizens to seek redress." *Juniper Networks, Inc. v. Andrade*, No. 20-cv-02360-BLF, 2021 WL 3514103, at *5 (N.D. Cal. Aug. 10, 2021) (citations omitted). California plainly has an interest in providing a forum for its citizens to seek redress. *See id.* Dr. Sudhof is a citizen of California which is sufficient to give California an interest in this suit. This factor weighs against dismissal.

As to the second factor, Dr. Sudhof asserts his counterclaims under California law. *See* Dkt. No. 31 at 9-17. Neither party disputes that this Court is more familiar with the governing law than a Chinese forum. The second factor also weighs against dismissal.

With respect to the third factor, Cell Biotech argues that adjudicating the counterclaims here would require the Court and jury to review extensive Chinese-language evidence and testimony which would need to be translated. Dkt. No. 33 at 24. The Court agrees that the need to translate evidence and testimony would impose a burden on the Court and jury. *See U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1069 (N.D. Cal. 2003) (burden of needing to "translat[e] law and testimony into and from German" weighed in favor of Germany, rather than California, as the proper forum). The third factor weighs in favor of dismissal.

The parties did not address the fourth factor of whether congestion in this District weighs in favor of dismissal. The Court treats this factor as neutral.

As to the fifth factor, the costs to the parties associated with resolving their disputes in this forum, Cell Biotech states only that translating evidence and testimony from Chinese to English would be a "significant cost." Dkt. No. 33 at 24. Therefore, the costs to the parties associated with adjudicating the matter in this District are difficult to identify or to compare accurately with the costs of resolving their disputes in China. The Court treats this factor as neutral.

On balance, two public interest factors weigh against dismissal, one factor weighs in favor of dismissal, and two factors are neutral. Although the public interest factors do not strongly

weigh in favor of either party, the private interest factors tip the balance in favor of dismissal.

Accordingly, the Court grants Cell Biotech's motion to dismiss the first counterclaim for *forum non conveniens*. As the Court dismisses the first counterclaim on *forum non conveniens* grounds, the Court need not address Cell Biotech's arguments that international abstention, international comity, or the statute of limitations warrant dismissal of the first counterclaim.

At the hearing, Dr. Sudhof stated that since the filing of his counterclaim, Cell Biotech has misappropriated Dr. Sudhof's name or likeness on a new English-language website. Dkt. No. 46. The Court grants Dr. Sudhof leave to amend the first counterclaim, only to add allegations of new misappropriation that were not at issue in the China Proceeding.

**2. International abstention**

The Court considers whether dismissal of Dr. Sudhof's second, third, fourth, and fifth counterclaims is warranted under the doctrine of international abstention. Cell Biotech argues that dismissal under international abstention is proper because the China Proceeding is an "ongoing parallel proceeding[] . . . with a judgment expected in the near term." Dkt. No. 33 at 16. Dr. Sudhof argues that Cell Biotech has not established that a "true conflict" exists between U.S. and Chinese law as to the parties' dispute. Dkt. No. 37 at 17-18. Dr. Sudhof further argues that Cell Biotech has not established that these counterclaims and the China Proceeding are "truly the same, similar, overlapping, or even parallel." *Id.* at 18.

When presented with a motion to dismiss or stay under the doctrine of abstention, a court must weigh the *Colorado River* factors. *See Colo. River*, 424 U.S. at 818. The key to this inquiry is determining whether "exceptional circumstances" warrant federal abstention where there is a parallel proceeding in another forum. *See Seneca Ins.*, 862 F.3d at 841. In the context of parallel foreign proceedings, a court should weigh "(1) whether either court has assumed jurisdiction over a res, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) what law controls, and (6) whether the foreign proceeding is adequate to protect the parties' rights." *Farhang v. Indian Inst. of Tech., Kharagpur*, No. 08-02658 RMW, 2010 WL 2228936, at *2 (N.D. Cal. June 1, 2010) (citing *Nakash*, 882 F.2d 1411, 1415 (9th Cir. 1989)). "However, if there is substantial doubt as to

whether the foreign proceeding will resolve the federal action, there is no need to even undertake this multi-factor analysis." *Id.* (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993)).

The Court has already dismissed the first counterclaim on *forum non conveniens* grounds. Cell Biotech has not carried its burden to establish that "exceptional circumstances" warrant dismissal of Dr. Sudhof's remaining counterclaims under the doctrine of international abstention. Although Cell Biotech contends that the "proceedings underway in China substantially overlap[] [with] the action in this Court" and involve "the same parties and the same nucleus of operative facts," Dkt. No. 33 at 16, the China Proceeding involves only a misappropriation of name or likeness dispute, and Dr. Sudhof's second, third, fourth, and fifth counterclaims are based on different facts and different legal theories.

As there is "substantial doubt" as to whether the China Proceeding will resolve this action, the Court need not undertake the multi-factor analysis for assessing parallel foreign proceedings. Accordingly, the Court denies the motion to dismiss on the basis of international abstention.

**3. International comity**

Cell Biotech also argues that international comity applies to warrant dismissal of Dr. Sudhof's counterclaims. Dkt. No. 33 at 17-19. Again, Cell Biotech's international comity arguments pertain only to the first counterclaim and its overlap with the China Proceeding. *See id.*

For the same reasons above, Cell Biotech has not established that international comity requires dismissal of the remaining counterclaims. The Court denies the motion to dismiss on this basis.

**C. Rule 12(b)(6)**

Cell Biotech also argues that if the Court declines to dismiss Dr. Sudhof's counterclaims in deference to the China Proceeding, the Court should dismiss the counterclaims for failure to state a claim. Dkt. No. 33 at 4-16.

**1. Intentional misrepresentation (second counterclaim)**

Cell Biotech moves to dismiss Dr. Sudhof's counterclaim for intentional misrepresentation for failure to state a claim pursuant to Rule 12(b)(6) and for failure to plead the claim with

sufficient particularity pursuant to Rule 9(b). Dkt. No. 33 at 7-10. In addition, Cell Biotech argues that the statement that "Cell Biotech intends to establish a 'Cell Engineering Laboratory'" is a non-actionable "forward-looking statement of intent—not a representation of existing fact." *Id.* at 9. Dr. Sudhof responds that he has pled intentional misrepresentation with the particularity that Rule 9(b) requires. Dkt. No. 37 at 10-13. Dr. Sudhof does not respond to Cell Biotech's argument that the alleged misrepresentation is a non-actionable "forward-looking statement of intent."

The elements of intentional misrepresentation "are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1245 (Cal. Ct. App. 2023) (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (Cal. Ct. App. 2013)). "While a misrepresentation is generally only actionable if the misrepresentation concerns past or existing material facts, . . . a promise to do something in the future may constitute intentional misrepresentation if it was made without any intention to perform . . . ." *R Power Biofuels, LLC v. Chemex LLC*, No. 16-cv-00716-LHK, 2016 WL 6663002, at *11 (N.D. Cal. Nov. 11, 2016) (citations omitted).

Dr. Sudhof's intentional misrepresentation counterclaim does not meet the heightened pleading standard of Rule 9(b). Dr. Sudhof alleges that Cell Biotech knowingly misrepresented that it "intends to establish a 'Cell Engineering Laboratory' (an academic non-profit laboratory)" to induce Dr. Sudhof to enter the MOU and that Dr. Sudhof did, in fact, rely on the misrepresentation. *See* Dkt. No. 31 at 12-14. Dr. Sudhof claims that Cell Biotech's "intentional misrepresentations have harmed, and are the substantial factor in causing the harm to Dr. Sudhof's ability to enter into certain business relationships and prospective economic engagements." *Id.* at 14. Dr. Sudhof's allegations of causation and harm are vague and conclusory. Dr. Sudhof has not pled his intentional misrepresentation counterclaim with sufficient particularity.

Accordingly, the Court dismisses Dr. Sudhof's intentional misrepresentation counterclaim under Rules 9(b) and 12(b)(6), with leave to amend.

**2. Negligent misrepresentation (third counterclaim)**

Cell Biotech moves to dismiss Dr. Sudhof's counterclaim for negligent misrepresentation pursuant to Rule 12(b)(6). Dkt. No. 33 at 10-12. Specifically, Cell Biotech contends that the alleged misrepresentations are non-actionable "promises of future conduct." *Id.* at 11. Dr. Sudhof did not respond to Cell Biotech's specific arguments regarding the third counterclaim. *See* Dkt. No. 37 at 10-13.

Under California law, the elements of a claim for negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Alafi v. Cohen*, 106 Cal. App. 5th 46, 65 (Cal. Ct. App. 2024) (quoting *Ragland v. U.S. Nat'l Bank Ass'n*, 209 Cal. App. 4th 182, 196 (Cal. Ct. App. 2012)). A negligent misrepresentation must pertain to a past or existing fact; predictions of future events or actions are not actionable. *See, e.g.*, *Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 324286, at *11 (N.D. Cal. Jan. 27, 2016).

Here, Cell Biotech's statements, as alleged in the counterclaim, could be construed not as predictions as to future events, but as representations that Cell Biotech would establish a laboratory. In *Rufini v. CitiMortage, Inc.*, the court held that allegations that the defendant stated that the plaintiff was approved for a loan modification and that he would receive a permanent modification in the near future were "sufficient, for purposes of demurrer, to state a claim for negligent misrepresentation." 227 Cal. App. 4th 299, 302, 308 (Cal. Ct. App. 2014). Similarly, here, the counterclaim plausibly alleges that Cell Biotech's statement that it would build a laboratory was a misrepresentation of an existing fact. *See Nido v. Nationwide Mut. Ins. Co.*, No. 19-cv-07724-LHK, 2020 WL 1865324, at *7 (N.D. Cal. Apr. 14, 2020) (finding that it was "not obvious according to the settled rules of California that [p]laintiffs could not prevail on their negligent misrepresentation claim" where plaintiffs alleged that an insurance company's representative stated that the insurance company would approve their construction contract and reimburse them).

United States District Court
Northern District of California

However, Dr. Sudhof fails to plead any non-conclusory allegations about causation and harm. As with the intentional misrepresentation counterclaim, Dr. Sudhof states that Cell Biotech's negligent misrepresentations "have harmed, and are the substantial factor in causing the harm to Dr. Sudhof's ability to enter into certain business relationship sand prospective economic engagements." Dkt. No. 31 at 15. This is insufficient to state a claim for negligent misrepresentation.

The Court grants the motion to dismiss the negligent misrepresentation claim under Rule 12(b)(6), with leave to amend.

**3. UCL (fourth counterclaim)**

Dr. Sudhof alleges that Cell Biotech engaged in "an unlawful and unfair business act when it misappropriated Dr. Sudhof's name and likeness on its website" and "also engaged in an unlawful, unfair, and fraudulent business act when it induced Dr. Sudhof to enter into the MOU via intentional misrepresentations." Dkt. No. 31 at 16.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999); *accord Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). To plead a UCL claim, a plaintiff's allegations must show that a defendant's conduct violates one of these three "prongs." *Id.* Dr. Sudhof asserts a UCL claim under all three prongs.

Cell Biotech argues Dr. Sudhof's fourth counterclaim should be dismissed because it simply incorporates and repeats the same allegations underlying the first counterclaim for misappropriation and second counterclaim for intentional misrepresentation. Dkt. No. 33 at 13. Cell Biotech contends the UCL claim "does not identify any distinct conduct, any separate injury, or any independent basis for relief." *Id.* Dr. Sudhof responds that even if the fourth counterclaim is duplicative of the first and second counterclaims, he is permitted to plead "alternative theories of recovery." Dkt. No. 37 at 13. He further argues that because UCL claims "borrow" violations

United States District Court
Northern District of California

from other laws, it follows that the fourth counterclaim will be brought with regard to the same conduct as other counterclaims. *Id.* Dr. Sudhof argues that the fourth counterclaim adequately states a claim for relief because the alleged misconduct is "precisely the type of conduct proscribed by the UCL, even if it is the same conduct underlying other Counterclaims." *Id.* at 14.

At the hearing, Dr. Sudhof conceded that the fourth counterclaim rises and falls with the first, second, and third counterclaims. Dkt. No. 46. As the Court has dismissed the first, second, and third counterclaims, the Court also grants the motion to dismiss the fourth counterclaim, with leave to amend.

**4. Declaratory relief (fifth counterclaim)**

Cell Biotech moves to dismiss the fifth counterclaim on the basis that it is "entirely duplicative of the issues already presented by the Complaint." Dkt. No. 33 at 14-16. Dr. Sudhof responds that the counterclaim is not duplicative because he seeks "additional and different relief," specifically, "a declaration that the MOU is not valid, not binding, not enforceable, and that [Cell Biotech] is itself not a party to the MOU." Dkt. No. 37 at 15.

"Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008). "District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses." *Stickrath v. Globalstar, Inc.*, No. 07-cv-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (citation omitted).

Here, there is "perfect symmetry" between the issue presented in Cell Biotech's operative complaint and the issue raised in Dr. Sudhof's fifth counterclaim. *See CBS Outdoor LLC v. Cal. Mini Storage, LLC*, No. 14-cv-01598 SI, 2014 WL 5282088, at *7 (N.D. Cal. Oct. 15, 2014) (granting Rule 12(b)(6) motion to dismiss defendants' counterclaim for declaratory relief). The adjudication of Cell Biotech's breach of contract claim "will necessarily moot" any need for the declaratory relief that Dr. Sudhof seeks. *See id.*; *see also Berger v. Seyfarth Shaw, LLP*, No. 07-cv-05279 JSW, 2008 WL 2468478, at *2 (N.D. Cal. June 17, 2008) (dismissing declaratory judgment counterclaims because there was "nothing before the Court to suggest that Defendants'

declaratory judgment counterclaims would entitle them to any costs or fees beyond those it might otherwise be entitled to as a result of successfully defending against Plaintiffs' suit").

Accordingly, the Court grants Cell Biotech's motion to dismiss the fifth counterclaim, without leave to amend.

## IV. MOTION TO STRIKE

Cell Biotech asks the Court to strike the fifth counterclaim as redundant of Cell Biotech's complaint. Dkt. No. 34. This is the same argument Cell Biotech raised in its Rule 12(b)(6) motion to dismiss the fifth counterclaim. *Compare id. with* Dkt. No. 33 at 14-16.

As the Court has already granted Cell Biotech's Rule 12(b)(6) motion to dismiss the fifth counterclaim, the Court denies Cell Biotech's Rule 12(f) motion to strike the fifth counterclaim as moot.

## V. CONCLUSION

For the reasons explained above, the Court denies Cell Biotech's motion to strike as moot, and grants Cell Biotech's motion to dismiss, as follows:

(1) Counterclaim 1 (misappropriation of name or likeness) is dismissed, with leave to amend, only as to allegations of new misappropriation, if any, not at issue in the China Proceeding.

(2) Counterclaim 2 (intentional misrepresentation) is dismissed, with leave to amend.

(3) Counterclaim 3 (negligent misrepresentation) is dismissed, with leave to amend.

(4) Counterclaim 4 (UCL) is dismissed, with leave to amend.

(5) Counterclaim 5 (declaratory relief) is dismissed, without leave to amend.

Dr. Sudhof may file an amended counterclaim no later than **August 3, 2026**.

**IT IS SO ORDERED.**

Dated: July 20, 2026

Virginia K. DeMarchi

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California